UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FELICIA YVETTE NELSON,

                              Plaintiff,

                                                                         DECISION AND ORDER

                                                                             14-CV-6430L

             v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.
_____

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("the Commissioner") that plaintiff Felicia Nelson ("plaintiff") is not disabled under the Social Security Act ("the Act") and, therefore, is not entitled to Social Security Income benefits. The parties have both filed motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). (Dkts. #10, #12).

For the reasons discussed below, plaintiff's request for a remand is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff applied for Social Security Disability benefits under Title II of the Social Security Act on September 20, 2011, alleging disability as of September 12, 2011 due to, inter alia, cervical and lumbar disc disease, arthritis and asthma. (T. 169). At the time of her application, plaintiff was 41 years old, with a high school education and no past relevant work. (T. 29)

Plaintiff's application was initially denied. Plaintiff requested a hearing, which was held on March 4, 2013 before Administrative Law Judge ("ALJ") John P. Costello. (T. 21). The ALJ issued a decision on March 18, 2013, concluding that plaintiff was not disabled under the Social Security Act. (T. 21-30). That decision became the final decision of the Commissioner when the Appeals Council denied review on June 4, 2014. (T. 1-7). Plaintiff now appeals from that decision. The plaintiff has moved (Dkt. #10), and the Commissioner has cross moved (Dkt. #12) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).

For the reasons that follow, I find that the ALJ's decision failed to apply the correct legal standards, and is not supported by substantial evidence, but that the record does not contain persuasive proof of disability to the extent required to render further proceedings unnecessary. The matter is therefore remanded for further proceedings.

**DISCUSSION**

**I.     Standard for Determining Disability**

Under the Social Security Act ("the Act"), an individual is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). A physical or mental impairment (or combination of impairments) is disabling if it is of such severity that a claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy…" *Id.* at §§ 423(d)(2)(A); 1382c(a)(3)(B).

To determine whether a claimant is disabled within the meaning of the Act, the ALJ applies a now-familiar five-step sequential evaluation. *Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, analysis proceeds to step two.

At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the claimant's impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, analysis proceeds to step four.

At step four, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis notwithstanding limitations for the claimant's collective impairments. *See* 20 CFR §404.1520(e), (f). Then, the ALJ determines whether the claimant's RFC permits him to perform the

requirements of his past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step.

The claimant bears the burden of proof throughout steps one through four. However, at the fifth step, the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999), *quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986). *See* 20 CFR §404.1560(c).

## II.     Standard of Review

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as, "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774, *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997). Still, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Such a deferential standard, however, is not applied to the Commissioner's conclusions of law. *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984); *accord Tejada*, 167 F.3d at 773. This Court must independently determine if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Townley*, 748 F.2d at 112. Therefore, this Court is to first review the legal standards applied, and then, if the standards were correctly applied, consider the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987) ("[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles"). *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

**III.    The ALJ's Decision**

Here, the ALJ found at step one that the claimant had not engaged in substantial gainful activity since her application date of September 20, 2011. (T. 23). The ALJ found at steps two and three that plaintiff had a severe impairment consisting of cervical and lumbar disc disease, arthropathy, status post right metatarsal fracture, asthma, depression, anxiety and obesity, but concluded that these conditions did not meet or equal any listed impairment. *Id*. The ALJ found at step four that plaintiff had no appreciable past relevant work (her prior employment having consisted of work as a crossing guard and customer service representative in the distant past). He concluded that plaintiff retained the RFC to perform sedentary work, limited to simple tasks, with no more than occasional interaction with coworkers, supervisors, and the general public. (T. 25). Based on testimony at the hearing from vocational expert Peter Manzi, the ALJ

concluded at step five that plaintiff was not disabled because he could perform other jobs found in significant numbers within the national economy, including the positions of general assembler and table worker. (T. 30).

## IV.     Listing 1.04

The Commissioner argues that substantial evidence in the record exists to support the ALJ's decision that plaintiff is able to perform other work in the national economy. Plaintiff, on the other hand, argues that the ALJ's decision is based upon legal error. Plaintiff argues initially that the ALJ erred at step three in not finding plaintiff disabled under Listing 1.04 (Disorders of the Spine).

The ALJ explicitly notes that he "considered the Listing of Impairments and gave particular attention to Listing[] 1.04 (Disorders of the Spine)." (T. 24). Although the ALJ does not set forth any conclusion concerning that listing, his procession through the remaining steps of the sequential analysis implicitly indicates that he did not believe that the listing applied.

Because I find that there is substantial evidence in the record which might satisfy the requirements of Listing 1.04, and because the ALJ failed to set forth any analysis of, or explanation for, his finding that Listing 1.04 was not satisfied, the matter is remanded for further proceedings.

### A.     Listing 1.04 - Disorders of the Spine

At step three, the ALJ evidently concluded, without explanation, that plaintiff's severe impairment did not meet or equal Listing 1.04 for disorders of the spine, defined in relevant part as:

> 1.04 Disorders of the Spine (e.g., … spinal arachnoiditis, spinal stenosis,… degenerative disc disease . . . ) resulting in compromise of a nerve root (including the cauda equina) or spinal cord.  With: (1) Evidence of nerve root compression

characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine) . . .

20 CFR Pt. 404, Subpt. P, App. 1, §1.04A.

Plaintiff correctly notes that the ALJ appears to have overlooked substantial evidence in the record indicating nerve root compression, neuro-anatomic distribution of pain, pain and numbness in both upper and the lower extremities, limitation of motion, and some tests indicating positive straight leg raising, which plaintiff believes are sufficient to meet or equal Listing 1.04.

> **1.  Evidence of Nerve Root Compression Characterized by Neuro-Anatomic Distribution of Pain**

Because the ALJ did not explain the reason for his implicit conclusion that the requirements of Listing 1.04 were not met, it is unclear whether he considered the appreciable evidence of record relative to nerve root compression. For example, plaintiff's MRI records in 2010 and 2012 indicate central disc protrusion at the L5-S1 level with moderate to severe right neural foraminal narrowing, moderate right and mild left foraminal narrowing at the L4-L5 level, severe spinal stenosis with mild left neural foraminal narrowing at C6-C7, severe spinal stenosis with moderate to severe bilateral neural foraminal narrowing at C5-C6, severe spinal stenosis with moderate left and severe right neural foraminal narrowing at C4-C5, severe spinal stenosis with moderate left and minimal right neural foraminal narrowing at C3-C4, and a general observation of severe spinal canal stenosis resulting in "deformity and flattening of the spinal cord" at C4-C7. (T. 315-316, 580-581).

Neuro-anatomic pain resulting from nerve root compression (associated with moderate to severe foraminal narrowing) at these levels would be expected to manifest in the right leg, right

foot, head and neck, and hands and forearms. Plaintiff's longitudinal medical treatment records reflect a history of consistent complaints of unrelenting (and prodigiously increasing) pain, numbness, weakness and diminished function in precisely these areas. *See e.g.*, T. 425 (complaints of chronic back pain and right leg numbness and weakness on February 25, 2010); T. 413 (complaints of radiating finger, arm and elbow pain and numbness on June 15, 2010); T. 359 (complaints of back pain, "on and off" right leg pain, and numbness and pain in fingers and hands – consistently attributed by plaintiff's treating physicians to bilateral carpal tunnel syndrome – on August 13, 2010); T. 321 (complaints of back pain, radiating into right buttock and leg, as well as hand and finger pain and numbness, on December 10, 2010); T. 329 (complaints of shoulder and neck pain on May 9, 2011); T. 343 (complaints of back pain radiating into the right leg, causing numbness); T. 345 (complaints of right foot pain, right side back pain, and left-hand weakness); T. 352 (complaint that feet feel numb and "burned"); T. 363 (complaints of pain and diminished strength in hands, particularly the left hand, as well as coldness, heaviness and "deadness" in plaintiff's left arm – still attributed by plaintiff's treating physicians to carpal tunnel syndrome notwithstanding carpal tunnel release surgery three months earlier); T. 525 (complaint of right foot pain).

     Given the findings of objective testing showing significant foraminal narrowing at several levels, in combination with plaintiff's ongoing complaints of pain, weakness, tingling and numbness in the areas logically correlating to nerve root compression at those levels, the evidence of record could be sufficient to support a finding that this element of Listing 1.04 has been met.

### 2. Limitation of Motion of the Spine

The record is inconsistent with regard to whether plaintiff's range of motion is impaired. Although it does not appear that plaintiff's range of spinal motion was consistently assessed by her treating physicians, on July 3, 2012, progress notes from treating nurse-practitioner Karen Snow-Holmes indicate that plaintiff's gait was normal, with "normal range of motion of spine with tenderness." (T. 548). Other records, however, suggest that plaintiff's range of motion was limited. On December 10, 2010, plaintiff's treating physician noted "decreased back range of motion with flexion and extension." (T. 321). Consulting physician Dr. Harbinder Toor observed that plaintiff's lumbar range of motion was "restricted." (T. 445).

Although evidence of record concerning plaintiff's spinal range of motion is surprisingly scant given her long history of complaints of back pain, the evidence could be sufficient to support a finding that this element of Listing 1.04 has been met.

### 3. Motor Loss: Atrophy with Associated Muscle Weakness or Muscle Weakness, Accompanied by Sensory or Reflex Loss

With regard to sensory and reflex loss, the record reflects a longitudinal history of weakness and numbness in plaintiff's right leg and foot, arms and hands. On May 7, 2010, plaintiff complained of occasional hand numbness and tingling. (T. 417). On June 15, 2010, she complained of continued hand numbness and tingling, as well as problems gripping with her right hand. (T. 411). On July 12, 2010, plaintiff reported bilateral numbness in her arms and hands, with diminished sensation in her forearms, and numbness in her right leg. (T. 356). Testing showed a lack of light touch, vibratory sense or pinprick sensation in both hands and her right forearm, and no light touch sensation in her left forearm and right lower leg. (T. 357). On August 13, 2010, plaintiff presented with decreased sensation to all modalities in her hands and

forearms. (T. 359). On November 30, 2011, consulting physician Toor noted that plaintiff's grip strength was only 3/5 bilaterally, with tingling in her hands, difficulty apposing her fingers with her thumbs, "mild to moderate" difficulties with grasping, holding, writing, tying shoes, zippering, buttoning, manipulating a coin, or holding an object. (T. 444).

Given plaintiff's consistent complaints and test results reflecting muscle weakness and sensory loss in plaintiff's extremities, substantial evidence supports a finding that this element of Listing 1.04 has been met.

### 4.    If Involvement of the Lower Back, Positive Straight-Leg Raising Tests (Sitting and Supine)

The record contains only scant and inconsistent reports of straight leg-raising tests. *See* T. 529 (negative bilateral straight leg raising test on February 8, 2012); T. 425 (positive right straight leg raising test on February 26, 2010); T. 415 (positive right straight leg raising test on May 7, 2010); T. 548 (positive right straight leg raising test on July 3, 2012); T. 557 (negative bilateral straight leg raising test on August 21, 2012); T. 562 (negative bilateral straight leg raising test on September 14, 2012).

Initially, it does not appear that this element of Listing 1.04 is dispositive in any event, since plaintiff's symptoms appear largely attributable to issues with her cervical spine, for which MRI results show more dramatic and widespread foraminal narrowing, and not her lumbar (lower) spine. Thus, although evidence of record reflecting positive results of straight-leg raising tests is not overwhelming, the record does contain sufficient evidence to support a finding that, to the extent that plaintiff's symptoms are attributable to "involvement of the lower back," (the lumbar spine), this element of Listing 1.04 has been met.

"In circumstances… where the ALJ has stated no findings or conclusions with respect to a claim of disabling impairment, especially one to which the claimant arguably has demonstrated the symptoms described in the [listings, a court] cannot determine whether the ALJ's conclusion was based on a correct application of the law, and whether there is substantial evidence in the record to support it." *Aponte v. Secretary Dept. of Health and Human Services*, 728 F.2d 588, 592-93 (2d Cir. 1984).  Thus, where a claimant appears to meet at least some of the requirements of a listing, the ALJ is obligated to explain his reasons for finding that the listing is not met. *See e.g.*, *Estrada v. Astrue*, 2010 WL 3924686 at *5 (E.D.N.Y. 2010); *Cifuentes v. Astrue*, 2008 WL 4998426 at *5 (S.D.N.Y. 2008).

Under the circumstances, I find that the ALJ may have overlooked the record evidence concerning the plaintiff's nerve root impingement, neuro-anatomic distribution of pain, limitation of spinal motion, sensory loss, motor loss, and positive straight leg raising tests.  His conclusory, implicit finding that the requirements of Listing 1.04 were not met and not satisfactorily explained (or, indeed, explained at all).  However, because the record is inconsistent with regard to some elements of the relevant listing, this is not a case where further administrative proceedings or another hearing would serve no useful purpose, and thus, it is not a case where remand for the calculation of benefits is warranted.  I therefore remand the matter for further consideration and proceedings consistent with this opinion, including but not limited to the obtainment of additional evidence.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings (Dkt. #10) is granted, and the Commissioner's motion for judgment on the pleadings (Dkt. #12) is denied.  The final decision

of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this opinion, including but not limited to a thorough analysis as to whether plaintiff's impairments meet or exceed the requirements of Listing 1.04.

    IT IS SO ORDERED.

                                                        _____
                                                            DAVID G. LARIMER
                                                  United States District Judge

Dated: Rochester, New York
       July 14, 2015.